UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:21-CR-0027 |
| | ) | 2:23-CR-0111 |
| | ) | JUDGE GREER |
| | ) | |
| SEAN WILLIAMS | ) | |

**SENTENCING MEMORANDUM**

Comes now the United States of America, by and through Francis M. Hamilton III, United States Attorney for the Eastern District of Tennessee, and submits the following analysis of sentencing factors enumerated in 18 U.S.C. § 3553(a) and recommendation of sentence for the Court's consideration.

**I.    Sentencing Factors**

    *a. The nature and circumstances of the offense;*

The defendant was indicted on Escape, in violation of 18 U.S.C. §751(a) in case number 2:21-cr-0027 in addition to other charges and three counts of Using a Minor to Engage in Sexually Explicit Conduct for the Purpose of Producing a Visual Depiction in violation of 18 U.S.C. § 2251(a) in case number 2:23-cr-0111. (Doc. 154, PSR, ¶¶ 7-9).[1] The defendant was found guilty at trial in both cases and is now before the Court for sentencing as to both cases. (*Id.*)

The defendant's criminal conduct involved his exploitation of young children and their mothers and his eventual escape from federal custody pending trial. The

---

[1] U.S. Probation filed a Presentence report in each case, the reports are identical, apart from their file numbers. For reference, the United States will only refer to the report filed in case number 2:23-CR-0111.

1

Presentence Report, in paragraphs 10 through 29 details the evidence presented in both trials as well as related facts not presented in trial. (*Id*.) The United States agrees with the details in the Presentencing Report and incorporates them herein.

On September 19, 2020, officers responded to the defendant's home in Johnson City, Tennessee after a woman fell from his fifth story window. The investigation eventually led to a one-count Indictment charging the defendant for being a convicted felon in possession of ammunition in case number 2:21-cr-0027. (*Id*. at ¶ 1). An arrest warrant was signed; however, for over two years the defendant evaded arrest. During this time, it is believed that the defendant was aware that he was wanted and was intentionally avoiding law enforcement. While on the run, the defendant still met with his Johnson City drug dealer who continued to supply the defendant with "nine ounces of cocaine once a month for $1,200 per ounce [which] occurred six to seven times while the defendant was a fugitive and living in North Carolina." (*Id*. at ¶ 84).

The defendant remained a fugitive until April 29, 2023, when a Western Carolina University Police Officer found the defendant asleep in his vehicle on campus property at approximately 2:00 a.m. (*Id*. at ¶ 18). During that investigation, the defendant refused to provide his name. But the officer "located documents with the defendant's name [and] the defendant's Tennessee driver's license." (*Id*.) The investigation also led to the discovery of various types of drugs and drug paraphernalia, electronic devices and $101,378.65 in cash. (*Id*. at ¶ 25). The

2

defendant was arrested for possession of drugs and the federal warrant in case number 2:21-cr-0027. (*Id.* at ¶ 25).

The Chief of Police for Western Carolina University Police examined several of the defendant's electronic devices and found "evidence of child exploitation, common browser terms used on the dark web which are associated with child pornography, and adult women being sexually assaulted while they were unconscious." (*Id.* at ¶ 19). This began the investigation in case number 2:23-cr-00111.

While awaiting trial in case number 2:21-cr-0027, the United States superseded the indictment and charged the defendant with attempting to escape federal custody on or about July 23, 2023. (*Id.* at ¶ 2). On September 12, 2023, the defendant was indicted in case number 2:23-cr-00111 with three counts of Using a Minor to Engage in Sexually Explicit Conduct for the Purpose of Producing a Visual Depiction. (*Id.* at ¶ 7). A little over a month later the defendant successfully escaped federal custody. (*Id.* at ¶¶ 11-13). For 30 days the defendant hid in an abandoned house down the street from the Greeneville Courthouse. (*Id.* at ¶ 14). Eventually he left the house and fled to North Carolina and then Florida in a stolen truck. (*Id.* at ¶ 13). A few days later Pinellas County, Florida, Sherriff deputies, with the help of their K-9, located the defendant under a tarp in the backyard of a home in Florida. (*Id.*) The defendant was indicted for the Escape in a Second Superseding Indictment on November 15, 2023, in case number 2:21-cr-027. (*Id.* at ¶ 5).

The defendant went to trial on July 23, 2024, in case number 2:21-cr-027. (*Id.* at ¶ 5). During trial, the jury heard from several law enforcements officers describing the details of the escape and the defendant's eventual capture. (*Id.* at ¶¶ 10-15). They read from his journal which listed his thoughts and plans for a successful escape, including "altering his appearance and his truck's appearance, where to sleep, stealing gas, selling CBD, potential problems, how to obtain cell phones, using text messages only, etc." (*Id.* at ¶ 13). The jury also heard from the defendant several times. Two employees of the United States Marshals Service testified about the defendant's confession to the escape and the United States played a jail house phone call where the defendant again detailed how he escaped. (*Id.* at ¶¶ 14-15). While the defendant attempted to argue in trial that he was somber during his confession to the Marshals, it was clear in the jail recording that he was proud of his escape from federal custody. On July 26, 2024, the defendant was found guilty of the Escape. (*Id.* at ¶ 5).

On November 12, 2024, the defendant proceeded to trial in case number 2:23-cr-0111. During trial, the mothers of Minor Victim 1, Minor Victim 2 and Minor Victim 3 told the jury about their experiences with the defendant. But as the jury quickly learned, some of these mothers' memories were obscured and it wasn't until federal and state agents approached these mothers with the photos and videos of their children, found in the defendant's possession, that their true nightmare began. (*Id.* at ¶¶ 21-23).

At trial, an agent with the Federal Bureau of Investigation testified about some of the electronic devices found in the defendant's car in April 2023. The agent showed the jury numerous folders that contained images and videos of the minor victims and their mothers being sexually assaulted by the defendant. (*Id.* at ¶ 20). The United States presented to the jury photos that showed the defendant placing his penis on a nine-month-old baby's mouth, while the baby, strapped to his car seat, remained helpless. (*Id.* at ¶ 23). The jury saw photos of a four-year-old little girl asleep in the defendant's apartment and the defendant exposing her vagina to the camera and placing his penis in her sleeping hands. (*Id.* at ¶ 22). Finally, the United States introduced photos of a seven-year-old girl that appeared to be unconscious, as the defendant not only exposed her vagina to the camera but placed his penis inside of her mouth. (*Id.* at ¶ 21). The defendant placed what appeared to be feces inside the sleeping victim's mouth as well. (*Id.*)

While the sexual exploitation of the three minor children was the conduct for the charged offenses in case number 2:23-cr-0111, it sadly was just a fraction of his full conduct. To gain access to these young children the defendant first needed to render their mothers unconscious. (*Id.* at ¶¶ 21-23). The three mothers testified, and the jury saw numerous videos and photos that clearly showed the mothers limp and unresponsive as the defendant moved and manipulated the women so that he could sexually assault them. (*Id.*) While the jury only saw a handful of photos and video as to each mother, the defendant possessed hundreds more photos and videos

5

Case 2:21-cr-00027-JRG-CRW    Document 206    Filed 02/10/25    Page 5 of 15
PageID #: 2817

of these women and 61 more women being sexually assaulted by the defendant. (*Id.* at ¶¶ 21-23 and 83).

Agents also located two other minor victims. (*Id.* at ¶ 28). Agents found 20 images of a little girl "approximately three to five years old." (*Id.*) In these images the child is awake during the sexual assaults as further detailed in the Presentence Report. (*Id.*) There are videos and images of the second victim "who is approximately between the ages of five and eight." (*Id.*) These images and videos are detailed in the Presentence Report. (*Id.*)

The defendant kept all these photos and videos organized in various folders, and repeatedly used the word "Rape" when naming several of the folders and images. (*Id.* at ¶ 20). The defendant organized similar images in various folders. A folder entitled "All Sleep" showed several adult victims and Minor Victim 1 in various photos with their eyelids pulled open. (*Id.* at ¶¶ 20-21). The women and child are clearly unconscious. (*Id.*) Several of the photos show the defendant's penis near or in the women and child's mouth. Not only did the defendant categorize these horrific acts in various folders, but he also manipulated the images and created collages that were organized in his "Rape Collage" folder. (*Id.* at ¶¶ 20-22). The collages contained nonsexual images of the women and children, likely obtained from social media, surrounded by photos of his sexual assaults. (*Id.*) He also created several collages of cropped photos of the genitals of his unconscious victims and a nonsexual photo of their face placed next to the body part. (*Id.* at ¶ 20). In other folders entitled "Kids to cum on" and "Modified kids and people I know" the

defendant took nonsexual photos of minor children including Minor Victim 1 and photoshopped them to create sexually explicit images.

The electronic devices also "revealed 108,461 images containing child sexual abuse material (CSAM); 3,816 videos containing CSAM; 2,779 CSAM images that included sadistic, masochistic, or violence; 253 CSAM videos that included sadistic, masochistic, or violence; 9,968 CSAM images that included infants or toddlers; 323 CSAM videos that included infants and toddlers; 456 CSAM images that included bestiality; and 18 CSAM videos that included bestiality. Of the videos containing CSAM, the longest video was one hour, two minutes, and 57 seconds." (*Id.* at ¶ 27). The defendant was indicted in Western District Court of North Carolina for the possession and transportation from Tennessee to North Carolina of these images and videos. (*Id.* at ¶ 89).

While the jury did not hear from the defendant in this trial—as is his right— they certainly saw him in numerous photos and videos sexually assaulting these women and children. On November 14, 2024, the defendant was found guilty of all three counts of Using a Minor to Engage in Sexually Explicit Conduct for the Purpose of Producing a Visual Depiction.

The defendant's course of conduct spanned over a decade, and the trauma on these victims will last a lifetime. At this time there is no evidence that the photos were distributed beyond the defendant's own personal devices, but those pictures and videos remain, captured in time, as undeniable evidence of his exploitation. The

7

victims will always live with the memories of this trauma and the continuing fear that these pictures or videos could resurface.

      b. *The history and characteristics of the defendant;*

The defendant's criminal history includes multiple convictions for simple possession of marijuana, a felony marijuana conviction from 1994 and a misdemeanor assault conviction from 2007 in which the victim was a police officer. (*Id.* at ¶¶ 73-74, 76, 78). Because of the age of the drug convictions, the defendant received only one criminal history point. (*Id.* at ¶ 82). However, the reality is that defendant has been continually committing crimes against women and children since at least June of 2008 when he assaulted Minor Victim 1 and her mother.

The defendant has also committed drug crimes throughout most of his life. (*Id.* at ¶ 100). He used marijuana daily from the time he was a child until "2018 or 2019." (*Id.*) He began using powder cocaine in "2018 or 2019" and progressed to daily use, last using approximately two years ago. (*Id.*) The defendant used LSD/acid "a lot" when he started his own business. (*Id.*) He denies using methamphetamine but admits that in 2023 he purchased it to sell. (*Id.*) He admits to selling LSD and marijuana as well. (*Id.*) At the time of the defendant's initial arrest in this case, he was passed out at the wheel of his car with drug paraphernalia at his side.[2] (*Id.* at ¶ 18). Despite all this, the defendant maintains that he does not need drug treatment. (*Id.* at ¶ 101.)

---

[2] Evidence of the drug paraphernalia was not introduced at trial but was introduced during the suppression hearing held in this case on October 15, 2024.

The defendant describes himself as a "very successful businessman" and states that he owned "several condominiums and luxury vehicles." (*Id.* at ¶ 104). He also owned his own "general contracting business, Glass and Concrete Contracting, LLC." (*Id.* at ¶ 103).

The defendant's money, access to drugs, and the influence that went along with being a business owner created a power dynamic that allowed him to exploit the minor victims and their mothers and to discourage them from reporting the crimes. Rather than choosing to use his money and influence to improve the community he lived in, he used it to gain access to vulnerable women and children.

   c. *To reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense;*

Any harm to a child is a serious offense. As a society, it is our duty to protect children, they are the most vulnerable and precious members of society. The defendant was a predator. He sought out vulnerable women and mothers that he could exploit for his own sexual gratification, and when he could have access to the young children in their lives, he exploited them as well. For over a decade he repeatedly drugged and sexually assaulted these women and children, collecting photos and videos of the numerous encounters.

The defendant was a fugitive twice during this case. First from 2021 to 2023 and finally when he escaped from a transport van headed to Court. The defendant has no respect for the law. He may claim his innocence but escaping to avoid prosecution is the antithesis of criminal justice. The defendant showed complete

disrespect to this Court and the criminal justice system as a whole when he decided to take matters into his own hands.

The defendant's conduct during his Escape trial is further evidence of his lack of respect for the law. The defendant, acting as his own attorney, repeatedly disregarded the Court's orders, making statements to the jury that the Court had ruled were inadmissible. The Court strongly admonished the defendant multiple times and expressed frustration at the defendant's flagrant disregard for the Court's instructions.

Every aspect of the defendant's criminal conduct in this case shows a lack of respect for the law. The only just punishment is for the defendant to remain in prison for the rest of his life.

> *d. to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant;*

During every stage of this case, the defendant's actions exemplify a person that likely will not be deterred from further criminal conduct. As detailed above, the defendant has repeatedly defied the law. He has sexually assaulted women and children for over a decade and when finally caught, escaped prison to avoid justice. For 34 days, those who are sworn to protect the public from dangerous offenders like the defendant could not account for him. The United States can only surmise the re-traumatization and renewed fear these victims must have felt when the defendant escaped.

The defendant's convictions have led to multiple minimum mandatory prison

terms. While minimum mandatory sentences serve as a general deterrence to persons that exploit children, the United States believes the individual deterrence to the defendant must extend beyond mandatory minimums. U.S. Probation correctly applied multiple specific characteristic enhancements and adjustments in calculating the guidelines. The enhancements consider the defendant's conduct, the age of the victims and the way he exploited the victims. The multiple levels of enhancements increased the advisory guideline sentence calculation beyond the statutorily mandated minimum sentences.

The United States also notes that the guidelines do not consider all the defendant's convictions. Due to the calculations in case number 2:23-cr-0111, the defendant's Escape conviction in number 2:21-cr-0027 has no bearing on the guidelines. (*Id*. at ¶ 61). A consecutive sentence in both cases would better protect the public and highlight the need for deterrence.

Protecting the public from the defendant is paramount. The offense conduct demonstrates that the defendant is a child molester and serial rapist. The repeated nature of his conduct and his attempts to avoid punishment show that he will continue to be a danger if he is released. The Court should impose a sentence that ensures that he will spend the rest of his life in prison.

> e. *to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;*

The defendant has expressed that he is not interested in participating in

drug treatment while in the Bureau of Prisons. (*Id*. at ¶ 101). However given the defendant's behavior in this case, the United States hopes that the defendant will pursue mental health treatment while incarcerated and will someday appreciate and accept the harm he caused.

## II. <u>Defense Objections</u>

The defendant has filed multiple objections to the Presentence Report. (Doc. 163, Objections). As the defendant acknowledges, and the United States agrees, the defendant's objections do not affect the guidelines. Nonetheless the United States responds in opposition.

The defendant first objects to facts that he deems "are unnecessary for sentencing." (*Id.*) He argues that several related facts are "not relevant conduct, not proper for inclusion in the PSR or for consideration at sentencing." However, the Court has "[n]o limitation [] on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. The fact that the defendant possessed thousands of images of child pornography in addition to the images and videos that he produced is relevant to the nature of the offense, the need for deterrence, and the danger that the defendant poses to the community. Further, considering that the defendant also produced CSAM images of two additional minor children is relevant for the same reasons. It is similar in kind to the charged conduct and was created during the same period.

12

Evidence regarding the defendant's attempted escape from the Washington County jail is relevant even though he was not convicted of attempted escape. His behavior while incarcerated for the present offenses demonstrates a lack of respect for the law. The Court heard the proof at trial and can place the appropriate weight on the defendant's behavior. Therefore, the objections should be overruled to allow the Court to render an appropriate sentence.

The defendant next objects to the four-level enhancement applied in Count One involving the commission of a sexual act involving conduct described in 18 U.S.C. § 2241. (Doc. 163). Specifically, he argues that the United States cannot prove that the defendant "rendered" Minor Victim 1 unconscious. However, the United States would point to the evidence presented at trial to prove by a preponderance of the evidence that it was the defendant that rendered Minor Victim 1 unconscious.

At trial, all three mothers testified to losing consciousness at the defendant's home. Each also stated that they and their child were alone with the defendant in the home. Minor Victim 1's mother testified that she and her daughter slept through the night without waking up. Minor Victim 1's mother noted that normally she would expect her daughter to wake up at some point during the night when in an unfamiliar place. When they woke up, she testified that both she and Minor Victim 1 were in a different position in the bed than they had been when they went to sleep. Minor Victim 1 was on the other side of her next to the defendant. Finally, the images of Minor Victim 1 introduced at trial clearly showed a little girl

that was not simply asleep, but unconscious. One photo showed "[t]he defendant lift[] Minor Victim 1's eyelids with his hand to open her eyes." (Doc. 154 at ¶ 21, Ex. 14h). This action would have likely caused a child who had not been drugged to wake up. Furthermore, the defendant would not have peeled her eyes open unless he knew that she was unconscious. It is clear from the evidence presented at trial that the four-level enhancement was properly applied, and the objection should be overruled.

### III. Recommendation

The presentence report prepared by U.S. Probation establishes the advisory guideline range to be Life, offense level 43 and a criminal history category I. (*Id.* at ¶ 106). However, as the PSR correctly states, "the statutorily authorized maximum sentences are less than the minimum of the applicable guideline range; therefore, the guideline term of imprisonment is 1140 months." (*Id.*) The United States concurs that this is the applicable advisory range.

The United States believes that the § 3553(a) factors, including the serious nature of the offenses and the need to protect the community, support the imposition of the highest possible term of imprisonment. Because a life sentence is not available due to the statutory maximums in this case, the United States recommends a sentence of 1140 months (95 years). This sentence would all but guarantee that the defendant would serve the rest of his life in prison. Though this sentence is lengthy, the United States submits that it is necessary to provide sufficient punishment for extraordinarily heinous crimes and sufficient deterrence

to an extraordinarily dangerous individual.  The United States objects to any departure or variance from the correctly calculated sentencing guideline range.

>
> Respectfully submitted,
>
> FRANCIS M. HAMILTON III
> United States Attorney
>
> By:   *s/ Meghan L. Gomez*
> Meghan L. Gomez
> Assistant U.S. Attorney
> FL BPR: 68858
> 220 West Depot Street, Ste. 423
> Greeneville, TN 37743
> (423) 639-6759
> Meghan.gomez@usdoj.gov
>
> *s/  Emily M. Swecker*
> EMILY M. SWECKER
> Assistant U.S. Attorney
> 220 West Depot Street, Ste. 423
> Greeneville, TN  37743
> (423) 639-6759
> TN BPR# 029401
> Emily.swecker@usdoj.gov